## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| IN RE: | : **CHAPTER 7** |
| | : |
| **ALLISON MARIE FUQUEA,** | : |
| | : **CASE NO. 20-40942BEM** |
| **Debtor.** | : |
| | : **(HONORABLE BARBARA ELLIS-MONRO)** |

## MOTION TO SELL ESTATE'S INTEREST IN REAL ESTATE TO AMBER FORD PURSUANT TO 11 U.S.C. §363(b), FOR WAIVER OF FOURTEEN (14) DAY STAY SET FORTH IN FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h), REQUEST FOR APPROVAL OF SHORTENED NOTICE PROCEDURES, AND FOR OTHER RELIEF

Comes now Thomas D. Richardson, Trustee in bankruptcy for Allison Marie Fuquea (Thomas D. Richardson, Trustee, hereinafter referred to as "Richardson" or "Trustee"), and pursuant to 11 U.S.C. §363(b) files this Motion to Sell the Estate's Interest in Real Estate to Amber Ford, for Waiver of Fourteen (14) Day Stay set forth in Federal Rule of Bankruptcy Procedure 6004(h), Request for Approval of Shortened Notice Procedures, and for Other Relief showing the Court as follows:

1.

The Debtor, Allison Marie Fuquea, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 18, 2020.

2.

Richardson is the duly qualified and acting Chapter 7 Trustee in bankruptcy for Allison Marie Fuquea.

3.

Property of the estate includes property located at 1314 East Hermitage Road, Rome, Floyd County, Georgia and being more particularly described as being all that tract or parcel of land lying and being in Land Lot 65 of the 23rd District and 3rd Section of Floyd County, Georgia, and being more particularly described in the Warranty Deed dated November 18, 2016 between Benny Wayne Grubb (Grantor) and Allison Fuquea (Grantee) recorded in Floyd County, Georgia Deed Records Book 2485, Page 509 ("Property"). The Property is identified as Floyd County Tax Parcel No. M11Y024. Debtor has asserted a $21,500.00 homestead exemption in the Property.

4.

Upon information and belief, the Property is encumbered by one open security deed. Schedule D lists a first priority deed to secure debt held by Cenlar FSB in the amount of $126,661.00 (Doc. 1, p. 16).

5.

The Trustee, believing there to be equity in the Property sufficient to create an estate from which creditors could be paid a distribution, filed an application on July 13, 2020 for authority to employ Rich Montgomery and Howard Realty, Inc. as real estate professionals (Doc. 14). The Court entered an Order on July 16, 2020, authorizing the Trustee to employ Rich Montgomery and Howard Realty, Inc. (Doc. 17).[1]

6.

Amber Ford ("Buyer") expressed interest in the Property, and following negotiations, the Trustee entered into a contract to sell the Property to Buyer, and a copy of the contract entered into

---

[1] To address an issue raised by the Office of the United States Trustee, the Trustee filed an amended Application to Employ (Doc. 20) and the Court entered an Amended Order (Doc. 22).

658665.1

by the Trustee and Buyer is attached hereto as Exhibit "A" and incorporated herein by specific reference (the contract hereinafter being referred to as "Contract").

7.

Pursuant to the terms of the Contract, Buyer has contracted to purchase the Property for $215,000.00 with Seller paying $4,000.00 in closing costs.

8.

Under the terms of the Contract, pertinent provisions include: (a) Buyer agrees to buy and the Trustee agrees to sell the bankruptcy estate's interest in the Property for $215,000.00 with Seller contributing $4,000.00 closing costs, netting the estate $211,000.00; (b) 2020 real estate taxes on the Property shall be prorated as of the date of closing; (c) the Property is being sold "as-is", and the Trustee has no obligation to make repairs to the Property; (d) if approved, the Closing Date shall be the later of the Closing Date specified in Paragraph 4 of the Contract's Key Terms and Conditions (November 24, 2020) or the 10th day following entry of an Order by the Bankruptcy Court authorizing the Trustee to sell the estate's interest in the Property; (e) sale of the Property is subject to the Trustee filing a motion for authority to sell the estate's interest in the Property and an Order being obtained from the Bankruptcy Court approving same; and (f) notwithstanding anything to the contrary in the Contract, the Trustee will execute a Trustee Deed in lieu of a Warranty Deed to convey the estate's interest in the Property being sold, and any title affidavits to be executed will be based solely on the Trustee's personal knowledge of the facts therein.

9.

The Contract is contingent on the sale by Buyer of her house, which is under Contract and scheduled to close November 20, 2020. The Contract between Trustee as Seller and Amber Ford as Buyer identified a November 24, 2020 closing date.

10.

Assuming Buyer is able to close on the sale of her home on November 20, 2020, Buyer and Seller would like to close the sale on the Property as soon as possible, once approved by the Court. Trustee has concerns that if this Motion to Sell is not granted without delay, Seller may lose the sale, prejudicing creditors, because of the delay faced by Buyer in closing.

11.

The Trustee has signed the Contract, and parties in interest are encouraged to review the Contract attached hereto for a complete description of the terms of the sale.

12.

Upon information and belief, the $215,000.00 gross sales price to the estate is fair and reasonable, and the terms of the sale expressed in the Contract were negotiated at arm's length and in good faith. The Trustee believes that it would be in the best interest of the estate for the Court to approve the sale of the estate's interest in the Property on the terms and conditions stated in the Contract. If the sale is approved, following payment of Court approved sales commission, the estate's pro rata share of 2020 property taxes, Seller paid closing costs of $4,000.00, and the Debtor's $21,500.00 (a)(1) exemption claimed in the Property, the estate should net approximately $40,000.00.

<u>The Proposed Sale Satisfies the Applicable
Standard for Section 363 (b) Sales</u>

13.

Section 363(b) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The standard applied by bankruptcy courts in the Eleventh Circuit is whether the sale has a "sound business justification".  <u>In re Big Shanty Land Corp.</u>, 61 B.R. 272 (Bankr. N.D. Ga 1985).  Under the "sound business justification" test, for the reasons set forth in this Motion, the proposed sale of the Property satisfies the requirements for a sale of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

14.

The Trustee believes that it would be in the best interest of the estate for the Court to approve the sale of the estate's interest in the Property on the terms and conditions stated in the Contract, said sale to be "as-is" without any representations or warranties by Richardson.

<u>Request for (a) Waiver of Fourteen (14) Day Stay Pursuant to Federal Rule of
Bankruptcy Procedure 6004(h) and (b) Approval of Shortened Notice Procedures.</u>

15.

The Trustee proposes to serve notice of this Motion, the relief requested herein, and the transactions, hearings, deadlines and dates contemplated hereby upon (i) all non-government creditors who have filed proofs of claim in the case,[2] (ii) all parties known to claim an interest in the Property, (iii) all entities who have filed a notice of appearance and request for service of papers

---

[2] The bar date for non-government proofs of claim was October 7, 2020 (Doc. 11)

in this case, (iv) all government entities listed on the creditor matrix, (v) Debtor's counsel, and (vi) the office of the United States Trustee.

16.

The Trustee will serve any Order and/or Notice regarding a hearing and/or shortened notice of this Motion on each entity having a lien or claiming a lien on the Property by overnight mail; all other creditors and parties-in-interest identified in Paragraph 15 above will be served by regular first class U.S. mail postage prepaid. Creditors and parties in interest registered with CM/ECF will likewise receive notice and a link to any Order and/or Notice from their CM/ECF registration.

17.

Section 363(b)(1) of the Bankruptcy Code provides that the Trustee, after notice and hearing may use, sell or lease, other than in the ordinary course of business, property of the estate. Under section 102 of the Bankruptcy Code "after notice and a hearing" means such notice and such opportunity for hearing as is appropriate in the particular circumstances. Pursuant to Fed. R. Bankr. P. 2002 (a)(2), parties in interest must receive twenty-one (21) days notice of a proposed sale of property of the Debtor other than in the ordinary course of business unless the court for cause shortens the time. Richardson (a) asserts that as set forth in Paragraphs 9 and 10 above, cause exists to shorten the notice period to fourteen (14) days, (b) asserts that time is of the essence, and (c) requests that the notice be shortened to fourteen (14) days and the sale of the Property be approved and consummated as soon as possible.

18.

The Trustee submits that the form and manner of giving notice of this motion and the relief requested herein is sufficient for entry of an order granting the relief requested herein, and that no further or different notice is required under the circumstances. Given the time sensitive nature of the sale, the Trustee believes that the notice described herein and the shortened notice period is appropriate.

WHEREFORE, for the reasons set forth herein, the Trustee prays as follows:

a)      that the Court shorten the notice procedures as set forth herein, shortening the notice period to fourteen (14) days;

b)      that the Court grant this Motion and enter an Order approving the §363(b) sale and waiving the fourteen (14) day stay provided by Federal Rule of Bankruptcy Procedure 6004(h);

c)      that the Court approve the Contract attached to this motion authorizing the Trustee to sell the estate's interest in the Property to Amber Ford, or her designees or assigns for $215,000.00 with Seller paying $4,000.00 in closing costs netting $211,000.00;

d)      that the Trustee be authorized to execute any and all documents necessary to consummate the sale and transfer the estate's interest in the Property as set forth in the Contract, specifically including, but not limited to, the execution of a Trustee Deed;

e)      that the Trustee be authorized to disburse monies at closing pursuant to the attached Contract;

f)      that the Trustee be authorized to pay from closing proceeds to the holders of valid liens and encumbrances against the Property such sums necessary to satisfy their liens and encumbrances;

g)      that the Trustee be authorized to pay from closing proceeds a real estate commission

equivalent to 6% of the actual purchase price of the Property;

h) that the Trustee be authorized to pay from closing proceeds those costs which are the Seller's obligations under the Contract;

i) that the Trustee be authorized to credit the Buyer (or pay directly) the estate's pro rata share of 2020 real estate taxes on the Property up to the date of closing;

j) that the Trustee be authorized to contribute $4,000.00 to Buyer's closing costs and pay customary seller's closing costs;

k) that the Trustee be authorized to pay Debtor her $21,500.00 exemption claimed under O.C.G.A. §44-13-100(a)(1); and

l) that the Trustee have such other and further relief as the Court deems just and proper under the premises.

> BRINSON, ASKEW, BERRY, SEIGLER.
> RICHARDSON, & DAVIS, LLP
>
> THOMAS D. RICHARDSON
> Georgia Bar No. 604313
> Attorneys for Trustee in bankruptcy for the estate
> of Allison Marie Fuquea

P.O. Box 5007
Rome, GA 30162-5007
(706) 291-8853
(706) 234-3574 (fax)
trichardson@brinson-askew.com

658665.1

- 8 -

Authentisign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

# AYERS Realty, LLC

## PURCHASE AND SALE AGREEMENT
Offer Date: 10/24/2020

*Georgia*REALTORS®

2020 Printing

### A. KEY TERMS AND CONDITIONS

**1. Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.

a. Property Identification: Address: 1314 East Hermitage Road NE
City Rome, County Floyd , Georgia, Zip Code 30161
MLS Number: 88,368,886 , Tax Parcel I.D. Number: M11Y 024

b. Legal Description: The legal description of the Property is *[select one of the following below]*:
☐ (1) attached as an exhibit hereto;
☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)
☑ (3) the same as described in Deed Book 2526 , Page 953 , et. seq., of the land records of the above county; OR
☐ (4) Land Lot(s)_____ of the _____ District, _____ Section/ GMD,
Lot_____ Block _____, Unit _____, Phase/Section _____
of _____ Subdivision/Development, according
to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

**2. Purchase Price** of Property to be Paid by Buyer.
$ 215,000.00

**3. Closing Costs.**
Seller's Contribution at Closing: $ 4,000.00

**4. Closing Date and Possession.**
Closing Date shall be 11/24/2020 with possession of the Property transferred to Buyer
☑ at Closing OR ☐ _____ days after Closing at _____ o'clock ☐ AM ☐ PM (attach F219 Temporary Occupancy Agreement).

**5. Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.)
Ayers Realty, LLC

**6. Closing Attorney/Law Firm.**
Bill Byington

**7. Earnest Money.** Earnest Money shall be paid by ☑ check ☐ cash or ☐ wire transfer of immediately available funds as follows:
☐ a. $_____ as of the Offer Date.
☑ b. $ 500.00 within 5 days from the Binding Agreement Date.
☐ c.

**8. Inspection and Due Diligence.**
a. Due Diligence Period: Property is being sold subject to a Due Diligence Period of 10 days from the Binding Agreement Date.
b. Option Payment for Due Diligence Period: In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
(1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
(2) shall pay Seller additional option money of $_____ by ☐ check or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; OR ☐ within _____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

**9. Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F316 Lead-Based Paint Exhibit) OR ☑ was not built prior to 1978.

**10. Brokerage Relationships in this Transaction.**
a. Selling Broker is Ayers Realty, and is: | b. Listing Broker is Howard Realty, and is:
(1) ☑ representing Buyer as a client. | (1) ☑ representing Seller as a client.
(2) ☑ working with Buyer as a customer. | (2) ☐ working with Seller as a customer.
(3) ☐ acting as a dual agent representing Buyer and Seller. | (3) ☐ acting as a dual agent representing Buyer and Seller.
(4) ☐ acting as a designated agent where: | (4) ☐ acting as a designated agent where:
_____ has been assigned to exclusively represent Buyer. | _____ has been assigned to exclusively represent Seller.

c. Material Relationship Disclosure: The material relationships required to be disclosed by either Broker are as follows:
None

**11. Time Limit of Offer.** The Offer set forth herein expires at 4 o'clock P .m. on the date 10/27/2020
Buyer(s) initials W Seller(s) initials _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Tammy Casey IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2020 by Georgia Association of REALTORS®, Inc.    F201, Purchase and Sale Agreement, Page 1 of 8, 01/01/20

EXHIBIT A 

Authentisign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

**B. CORRESPONDING PARAGRAPHS FOR SECTION A**

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by ~~limited warranty~~ deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** ~~Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which~~ service cannot be terminated as of the date of closing shall be prorated as of the date of closing. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial ~~adjustments between themselves~~ as are necessary to correctly prorate the tax bill. In the event there are tax savings ~~resulting from a tax appeal~~, third party professional costs to handle the appeal may be deducted from the savings ~~for that tax year~~ before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be ~~deemed assigned to Buyer at closing~~.

4. **Closing Date and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Holder of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Attorney/Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

AuthentiSign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

7. **Earnest Money.**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money when: (1) Holder has a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.
   b. **Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.
   c. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
   d. **Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**
      (1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property. The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.
      (2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.
      (3) **Notice of Decision Not To Proceed:** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.
   e. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

Authentisign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

10. **Brokerage Relationships in this Transaction.**

a. Agency Disclosure: No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

(1) No Agency Relationship: Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.

(2) Consent to Dual Agency: If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:

I. Dual Agency Disclosure: *[Applicable only if Broker is acting as a dual agent in this transaction.]*

(a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;

(b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;

(c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

(d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

II. Designated Agency Disclosure: If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

b. Brokerage: Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein.

c. Disclaimer: Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

**C. OTHER TERMS AND CONDITIONS**

1. **Notices.**

a. Generally: All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.

b. Delivery of Notice: A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

Copyright© 2020 by Georgia Association of REALTORS®, Inc.                F201, Purchase and Sale Agreement, Page 4 of 9, 01/01/20

AuthentiSign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

c. When Broker Authorized to Accept Notice for Client: Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party and notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein). Except as provided for herein, the Broker's staff at a physical address set forth herein or the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**
   a. Remedies of Seller: In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty.
   b. Remedies of Buyer: In the event this Agreement fails to close due to the default of Seller, Buyer may either seek the specific performance of this Agreement or terminate this Agreement upon notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein.
   c. Rights of Broker: In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this Agreement the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of commission to be paid to any broker involved in this transaction are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.
   d. Attorney's Fees: In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Offer Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Offer Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**
   a. Condemnation: Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.
   b. Consent to Share Non-Public Information: Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.
   c. Duty to Cooperate: All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
   d. Electronic Signatures: For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.
   e. Entire Agreement, Modification and Assignment: This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the Parties relating to the Property must be in writing and signed by the Parties. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.
   f. Extension of Deadlines: No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

Authentisign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

g. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

h. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

i. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions herein, amendments hereto, or termination hereof. However, if authorized in this Agreement, Broker shall have the right to accept notice on behalf of a party. Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it may only be resolved by the written agreement of the Buyer and Seller.

j. **Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party.

k. **Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.

l. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; (4) the section on condemnation; and (5) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.

m. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.

n. **Time of Essence:** Time is of the essence of this Agreement.

5. **Definitions.**

a. **Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

b. **Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.

c. **Broker:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.

d. **Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

e. **Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

6. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send false wiring instructions to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

**7. LIMIT ON BROKER'S LIABILITY.** BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):

a. SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THAN A SUM NOT TO EXCEED $100; AND

b. NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.

**8. Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph of this Agreement, said exhibit or addendum shall control.

☐ All Cash Sale Exhibit (F401) "
☐ Back-up Agreement Contingency Exhibit (F604) "
☐ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "
☐ Community Association Disclosure Exhibit (F322) "
☐ Condominium Resale Purchase and Sale Exhibit (F204) "
☐ Conventional Loan Contingency Exhibit (F404) "
☒ FHA Loan Contingency Exhibit (F407) "
☐ Lead-Based Paint Exhibit (F316) "
☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "
☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "
☐ Legal Description Exhibit (F807 or other) "
☐ Loan Assumption Exhibit (F416) "
☒ Sale or Lease of Buyer's Property Contingency Exhibit (F601) "
☐ Seller's Property Disclosure Statement Exhibit (F301, F304, F307 or F310) "
☐ Survey of Property as Exhibit "
☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F210) "
☐ USDA-RD Loan Contingency Exhibit (F413) "
☐ VA Loan Contingency Exhibit (F410) "
☐ Other
☐ Other

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

Seller to provide a Choice Home Warranty not to exceed $500.00

[EG]

☐ Additional Special Stipulations are attached.

Copyright© 2020 by Georgia Association of REALTORS®, Inc. F201, Purchase and Sale Agreement, Page 7 of 7, 01/01/20

Authentisign ID: 17CA5A5-43FD-4BC9-ACC3-2E37AFEEF50B

AuthentiSign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

**Buyer Acceptance and Contact Information**

1 Buyer's Signature *Amber Ford*

Print or Type Name: *Amber Ford*          Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

2 Buyer's Signature

Print or Type Name          Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Seller Acceptance and Contact Information**

1 Seller's Signature *First Ch, Trustee in bankrupty for Allison Guynea*          *10/28/2020*

Print or Type Name          Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

2 Seller's Signature

Print or Type Name          Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Selling Broker/Affiliated Licensee Contact Information**

Selling Brokerage Firm: *Ayers Realty, LLC*

Broker/Affiliated Licensee Signature: *Tammy M. Casey*  Date *10/24/2020*

Print or Type Name: *Tammy M. Casey*   GA Real Estate License # *305651*

Licensee's Phone Number *706-936-0376*  Fax Number *706-232-9797*

Licensee's E-mail Address *tammymcasey@gmail.com*

REALTOR® Membership *Greater Rome Board of*

Broker's Address *207 Shorter Avenue*

*Rome, GA  30165*

Broker's Phone Number *706-232-1112*  Fax Number *706-232-9797*

MLS Office Code *RMRMU*  Brokerage Firm License Number *H-31054*

**Listing Broker/Affiliated Licensee Contact Information**

Listing Broker Firm: *Howard Realty, INC.*

Broker/Affiliated Licensee Signature: *Rich Montgomery*  Date *10/24/*

Print or Type Name: *Rich Montgomery*   GA Real Estate License # *706-676-5073*

Licensee's Phone Number *706-676-5073*  Fax Number

Licensee's E-mail Address *rich@howardrealtyinc.com*

REALTOR® Membership *Greater Rome Board of*

Broker's Address

Broker's Phone Number *706-235-0111*  Fax Number

MLS Office Code *HOW001*  Brokerage Firm License Number *5367*

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of *10/29/2020* and has been filled in by *Tammy M. Casey*

Copyright© 2020 by Georgia Association of REALTORS®, Inc.          F201, Purchase and Sale Agreement, Page 0 of 8, 01/01/20

AuthentiSign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

# AYERS Realty, LLC

## FHA LOAN CONTINGENCY
## EXHIBIT " A "



*Georgia*REALTORS®

**2019 Printing**

This Exhibit is part of the Agreement with an Offer Date of __10/24/2020__ for the purchase and sale of that certain Property known as: __1814 East Her Mitage Road NE__ __Rome__, Georgia __30161__.

1. **Application.** Buyer shall promptly apply for and in good faith seek to obtain the Federal House Administration (FHA) loan or loan(s) described below ("Loan(s)") such that Buyer can fulfill Buyer's obligations hereunder prior to the expiration of this FHA Loan Contingency.

   *[Select A. or A. and B. below. Any box not selected shall not be a part of this Agreement. All Loan terms must be filled in.]*

| ☒ A. | FIRST MORTGAGE LOAN | Loan Amount | Term | Interest Rate (at par) | Rate Type | Source Of Loans Term |
|---|---|---|---|---|---|---|
| | | __96.5__% of purchase price | __30__ years | __3__ % per annum (or initial rate on adjustable loan) | ☒ Fixed<br>☐ Adjustable | ☒ Institutional |
| ☐ B. | SECOND MORTGAGE LOAN | ____ % of purchase price | ____ years | ____% per annum (or initial rate on adjustable loan) | ☐ Fixed<br>☐ Adjustable<br>☐ Interest Only | ☐ Institutional<br>☐ Seller<br>☐ Other |

2. **Use of Particular Mortgage Lender.** Unless an Approved Mortgage Lender is identified below, Buyer may apply for approval of the Loan(s) with any institutional mortgage lender licensed to do business in Georgia. If an Approved Mortgage Lender(s) is identified below, Buyer shall apply for approval of the Loan(s) with at least one such Approved Mortgage Lender. Nothing herein shall require Buyer to obtain mortgage financing from an Approved Mortgage Lender.

   **Approved Mortgage Lender(s)** __HomeStar Financial (Debbi Lindsey)__

   (hereinafter singularly "Approved Mortgage Lender" and collectively "Approved Mortgage Lender(s)")

3. **Buyer May Apply for Different Loan(s).** A Loan Denial Letter (as that term is defined below) must be for the Loan(s) described above. Buyer may also apply for different loans than the Loan(s) described above. However, the denial of such other loans shall not be a basis for Buyer to terminate this Agreement.

4. **Buyer to Notify Seller of Intent to Proceed.** When it is known, Buyer shall promptly notify seller of any mortgage lender to whom Buyer has sent a notice of intent to proceed with loan application and the name and contact information for the loan originator.

5. **Financing Contingency.** Buyer shall have __25__ days from the Binding Agreement Date ("Financing Contingency Period") to determine if Buyer has the ability to obtain the Loan(s) described above ("Financing Contingency"). Buyer shall be deemed to have the ability to obtain the Loan(s) unless prior to the end of the Financing Contingency Period, Buyer: a) notifies Seller that Buyer is terminating the Agreement because Buyer has been turned down for the Loan(s) and b) provides Seller within seven (7) days from the date of such notice a letter of loan denial from a mortgage lender based upon the mortgage lender's customary and standard underwriting criteria ("Loan Denial Letter"). The Loan Denial Letter and mortgage lender issuing the Loan Denial Letter must meet all of the requirements set forth elsewhere in this Exhibit. Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter may be provided to Seller after the Financing Contingency Period has ended if the above-referenced seven (7) day period to provide the Loan Denial Letter falls outside of the Financing Contingency Period.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH ___Tammy Casey___ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.    F407, FHA Loan Contingency Exhibit, Page 1 of 3, 01/01/19

Instanet*FORMS*

Authentisign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

6. **Use of Approved Mortgage Lender and Loan Denial Letter.** If Buyer has agreed to apply for the Loan(s) with an Approved Mortgage Lender, the Loan Denial Letter must be from an Approved Mortgage Lender. If Buyer is not required to apply for the Loan(s) with an Approved Mortgage Lender, the Loan Denial Letter may be from any institutional mortgage lender licensed to do business in Georgia. A Loan Denial Letter from a non-institutional mortgage lender shall not be the basis for Buyer to terminate this Agreement.

Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter may not be based solely upon any of the following: (a) Buyer lacking sufficient funds other than the amount of the Loan(s) to close; (b) Buyer not having leased or sold other real property (unless such a contingency is expressly provided for in this Agreement); or (c) Buyer not having provided the lender(s) in a timely fashion with all information required by lender, including but not limited to, loan documentation, Official Wood Infestation Reports, structural letters, well tests, septic system certifications, flood plain certifications and any other similar information required by lender (hereinafter collectively "Required Information"); or (d) Buyer making purchases that adversely affect Buyer's debt to income ratio.

Buyer may terminate this Agreement without penalty based upon an inability to obtain the Loan(s) only if Buyer fulfills all of the applicable requirements set forth in this Exhibit.

7. **Right of Seller to Request Evidence of Buyer's Ability to Close.** If the Financing Contingency ends without Buyer terminating this Agreement, Seller shall have the right, but not the obligation, to request that Buyer provide Seller with written evidence of Buyer's financial ability to purchase the Property ("Evidence"). A copy of a loan commitment from each institutional mortgage lender from whom Buyer is seeking mortgage financing to purchase the Property stating the type, amount and terms of the loan(s) and the conditions for funding the loan(s), shall be deemed sufficient Evidence. The provision of such Evidence is not a guarantee that the mortgage loan(s) will be funded or that Buyer will close on the purchase of the Property. Buyer shall have seven (7) days from the date Seller delivers notice to Buyer requesting such Evidence to produce the same. No request for such Evidence shall be made by Seller less than seven (7) days from the date of Closing.

8. **Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Evidence of Buyer's Ability to Close within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer three (3) days from the date of the delivery of the notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter due to Buyer's default upon notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

9. **Authorization of Buyer to Release Information to Seller and Brokers.** Buyer does hereby authorize Seller and the Brokers identified herein to communicate with the lenders with whom Buyer is working to determine and receive from said lenders any or all of the following information: (a) the status of the loan application; (b) Buyer's financial ability to obtain the Loan(s) or other loans for which Buyer has applied; (c) whether and when Buyer provided the lenders with Required Information; (d) whether and what conditions may remain to complete the loan application process and issue of a loan commitment; and (e) the basis for any Loan Denial Letter.

10. **Miscellaneous.** For the purposes of this Exhibit, the term "mortgage loan" shall refer to a secured lending transaction where the loan or promissory note is secured by a deed to secure debt on the Property. Whether such mortgage loan is a first or second mortgage loan is a reference to the legal priorities of the deeds to secure debt relative to each other and other liens and encumbrances.

11. **Amendatory Clause.** It is expressly agreed that, notwithstanding any other provisions of this Agreement, Buyer shall not be obligated to complete the purchase of Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given in accordance with HUD/FHA requirements a written statement by the Federal Housing Commissioner or a Direct Endorsement lender setting forth the appraised value of Property of not less than $ _215,000.00___, Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

12. **Mortgage Insurance Premium.** The FHA up-front _1.75__ percent (%) mortgage insurance premium shall be paid by Buyer as follows: *[select one]*
☐ A. In full at closing,

**OR**

☒ B. added to the loan amount and financed. (If this box is checked, then the term "loan amount" as used herein shall mean the amount set forth in the Purchase and Sale Agreement plus the FHA mortgage insurance premium so financed; the monthly payments will increase accordingly.)

13. **When Mortgage Insurance Premium is Paid.** Buyer is aware that a monthly mortgage insurance premium shall be included in the regular monthly mortgage payments.

14. Seller shall pay the following lender fees: Tax Service Fees.
(These costs ☒ are included OR ☐ are in addition to any closing costs that Seller may have agreed to pay in accordance with the Seller's Contributions at Closing paragraph.)

15. **Repairs Required in FHA Commitment.** Any repairs required in the FHA Commitment shall be completed and paid for by ~~Seller~~ _____ prior to closing provided such repairs do not exceed $ ~~500.00~~ _____ in total costs.

AuthentiSign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

16. **Seller Pays for Certain Inspections.** Seller shall pay the cost of any lender-imposed inspections of the septic tank and/or well systems.

17. **Home Warranty.** If the improvements on Property are less than one year old at the time of closing, Seller shall, if required by FHA, provide a home warranty certificate acceptable to FHA.

18. **May Be Obligated to Connect to Public Sewer.** As required by FHA, both Buyer and Seller agree that if public water or a public sewer system is available at the street, Property must be connected, and that *[select one]:* ☒ ——Seller—— agrees to pay the cost of said connection not to exceed $ —850.00— OR ☐ Buyer to pay $ _____ and Seller to pay $ _____ for the cost of connection. At the time of closing, Seller shall provide certification from the proper authority that Property is connected to and serviced by the public system.

19. **Certification of Truthfulness and Completeness.** Seller, Buyer, and Broker (and its Affiliated Licensees) certify that the above referenced Purchase and Sale Agreement is true and complete to the best of our knowledge and fully represents the transaction between them. No agreements exist outside this Purchase and Sale Agreement, and any agreements made from this date until closing, shall be revealed to lender.

20. **Certification of Arms Length Transaction.** Buyer and Seller certify that *[select one]:*
☒ This is an arms length transaction as there is no relationship between the Buyer and Seller OR ☐ this is not an arms length transaction because _____

21. **Exhibit Controls.** This exhibit shall control over a conflicting or inconsistent provision set forth in any other Exhibit to this Agreement.

22. If the Property is a condominium unit, the purchase of the Property shall be contingent upon the condominium in which the unit is located being eligible for and approved by FHA. In the event the Property is not a condominium unit, this paragraph shall not be deemed a part of this Exhibit.

| | |
|---|---|
| *(signature)* | *(signature)* , Trustee in bankruptcy f. |
| 1 Buyer's Signature | 1 Seller's Signature   Allison Fuguea |
| Amber Ford | |
| Print or Type Name | Print or Type Name |
| | |
| 2 Buyer's Signature | 2 Seller's Signature |
| | |
| Print or Type Name | Print or Type Name |
| ☐ Additional Signature Page (F207) is attached. | ☐ Additional Signature Page (F267) is attached. |
| Ayers Realty, LLC | Howard Realty, Inc. |
| Selling Brokerage Firm | Listing Brokerage Firm |
| *(signature)* | *(signature)* |
| Broker/Affiliated Licensee Signature | Broker/Affiliated Licensee Signature |
| Tammy M. Casey | Rick Montgomery |
| Print or Type Name | Print or Type Name |
| Greater Rome Board of | Greater Rome Board of |
| REALTOR® Membership | REALTOR® Membership |

Copyright© 2010 by Georgia Association of REALTORS®, Inc.                    F407, FHA Loan Contingency Exhibit, Page 3 of 3, 01/01/10

Authentisign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

## AYERS Realty, LLC

### SALE OR LEASE OF BUYER'S PROPERTY CONTINGENCY EXHIBIT "_B_"


**Georgia REALTORS®**

2019 Printing

This Exhibit is part of the Agreement with an Offer Date of ___10/24/2020___ for the purchase and sale of that certain Property known as: ___1314 East Heratiage Road, NE    Rome___
Georgia ___30161___

A.  Buyer warrants that Buyer owns the real property located at ___9 Glen View Drive___
    ___Rome___ (City), ___GA___ (State), ___30161___ (Zip Code) ("Other Property") and
    has taken or is taking the following actions to sell and/or lease the Other Property: ___is under contract.___
    ___Due diligence will be up on 10/27/2020.___

B.  This Agreement is contingent upon the occurrence of the following on or before ___11/3/2020___
    ("Contingency Period"). *[Select 1. and/or 2. Any section not selected shall not be a part of this Agreement.]*
    ☑ 1. Buyer closing on the sale of the Other Property;

    ☐ 2. Buyer entering into a lease of the Other Property with a lease term of at least _____

C.  In the event that the Contingency Period ends without any contingency referenced above being fulfilled, this Agreement shall terminate. The contingency or contingencies referenced above may be waived by Buyer upon notice to Seller provided that such notice is given prior to the end of the Contingency Period.

D.  **Kick-Out Provision.** *[This section shall only be a part of this Agreement if it has been selected by initialing the box on the side of this section. If the box has not been initialed, it shall not be a part of this Agreement.]*

    Seller shall have the right to continue to offer Property for sale. In the event that Seller receives an acceptable offer to purchase the Property, Seller shall give Buyer notice of the same.

    Buyer shall then have _____ hours after receipt of the notice to deliver to Seller an Amendment to this Agreement signed by Buyer in which Buyer agrees to remove all contingencies in favor of Buyer, any Due Diligence Period in the Agreement and deposit with Holder additional earnest money of $_____. In the event Buyer does not deliver within the time period stated above: (1) the signed Amendment to Seller and (2) the additional earnest money (if any referenced above) to Holder, then this Agreement shall terminate and Buyer shall be entitled to a refund of Buyer's earnest money.

    In the event that Buyer delivers the Amendment referenced above to Seller and the additional earnest money (if any referenced above) to Holder within the time period stated above, Seller shall execute the Amendment and return a copy of the same to Buyer.

Buyer's Initials: ___AP___     Seller's Initials: ___TR___

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH ___Tammy Casey___ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.     F601, Sale or Lease of Buyer's Property Contingency Exhibit, 01/01/19

AuthentiSign ID: 17CA5A55-43FD-4BC9-ACC5-2E374FE5F50B

## SPECIAL STIPULATIONS TO PURCHASE AND SALE AGREEMENT
### (PROPERTY OF ALLISON FUQUEA)
### CHAPTER 7 CASE NO. 20-40942bem

1.  The property described herein is owned by Allison Fuquea, a Debtor in a Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Northern District of Georgia, Rome Division, Case No. 20-40689PWB. Thomas D. Richardson is the duly qualified and acting Trustee in bankruptcy for Allison Fuquea (hereinafter sometimes "Trustee"), and as such, has authority, subject to Bankruptcy Court approval, to enter into this agreement.

2.  Notwithstanding anything to the contrary contained in the Purchase and Sale Agreement dated October 24, 2020 ("Contract") or any attachments thereto, Seller is the duly qualified and acting Trustee in bankruptcy for Allison Fuquea, Case # 20-40942bem, U.S. Bankruptcy Court, Northern District of Georgia, Rome Division, and Seller is contracting to sell the estate's interest in the property described herein. The obligations of Seller hereunder will be binding on Seller only upon Bankruptcy Court approval of this Contract and the Trustee's exercising his sole business judgment to close the Contract.

3.  Thomas D. Richardson, as Trustee in bankruptcy for Allison Fuquea (a) has no knowledge of the condition of the property to be sold and will not be providing Seller's Property Disclosure Statement in connection herewith, and (b) has no knowledge of the property being a part of any particular type of community association and will not be providing a Community Association Fees, Disclosure, or Related Issues Exhibit in connection herewith.

4.  Any property sold by Trustee as Seller is being sold "as-is" and without any representations or warranties of any kind, and Seller has no obligation to make repairs to the property.

5.  Sale of the property described herein is SUBJECT to Trustee's filing a Motion to Sell and an Order being entered by the Bankruptcy Court approving same.

6.  The Trustee has disclosed any mortgages and liens of which he has knowledge, however, the Trustee has not done any exhaustive title search on the property prior to listing. The Trustee reserves the right to withdraw from the sale if, in the Trustee's sole business judgment, Trustee determines pursuing the sale to conclusion is not in the best interests of the estate and its creditors.

7.  There will be no re-proration of taxes or any other charges or expenses after closing.

8.  If the sale does not close, Buyer shall be responsible for all costs incurred by Buyer and Seller shall not have any liability whatsoever to Buyer.

9.  Notwithstanding anything in the Contact, the Trustee will execute a Trustee's Deed in lieu of a Warranty Deed to convey the estate's interest in the property being sold, and any title affidavits to be executed will be based solely on the Trustee's personal knowledge of the facts therein.

10. Any Owner's Gap Affidavit shall not attest to the Trustee's knowledge of any fact which

618267.1

AuthentiSign ID: 17CA5A55-43FD-4DC9-ACC5-2E374FE5F50B

predates his appointment as Trustee.

11. Notwithstanding anything to the contrary in the Contract, the Closing Date shall be on or before the later of the Closing Date specified in Paragraph 4 of the Contract or the 10th day following entry of an Order by the Bankruptcy Court authorizing the Trustee to sell the estate's interest in the subject property.

12. The interest in real property being sold is a bankruptcy asset known in bankruptcy as property of the bankruptcy estate. As property of the bankruptcy estate, when the real property is sold, the proceeds become a bankruptcy estate asset and must be transferred to the bankruptcy estate account. The Trustee is charged with the duty (under 11 U.S.C. 704) of collecting and reducing to money the property of the estate and being accountable for the reducing to money the property of the estate and being accountable for the property received. The Trustee is required to file specific forms tracking receipt and disbursement of all estate property and funds, and sale proceeds are required to be reported by Trustee on Form 1 under "Sale/Funds Received by the Estate" (column 5) and referenced on Form 2 using the applicable Form 1 asset reference number – among other things. Accordingly, the Office of the U.S. Trustee requires that all monies from a bankruptcy sale of property except for a credit for current year taxes flow through the hands of the Chapter 7 Trustee, and the closing statement should be drafted in such a way that the only deduction from the gross sales price at closing is a credit for current year taxes unless otherwise specifically ordered by the Court or authorized in writing by Trustee. As for prior year taxes (if any), and other liens, including consensual liens, real estate commissions and the like, those are typically reflected on the closing statement as "POC." Trustee looks to the closing attorney to secure the payoffs from all parties having liens against the property and for the closing attorney to include those figures in the closing statement – as the Trustee uses the closing statement as his guide in making distributions post-closing. The checks to mortgagees typically include a few extra days of interest to take into consideration the fact that it will be a few days after closing before the Trustee is able to cut checks. Once Trustee receives the closing proceeds (by check via overnight delivery) and Trustee's depository bank, notifies Trustee that the funds are available, Trustee cuts and issues checks to the lienholders and the bankruptcy estate's real estate professionals in the amounts noted in the closing statement. The real estate professionals commission is noted on the closing statement as POC. Trustee pays a real estate commission based on the net sales price (typically the gross sales price less any agreed Seller paid closing costs of the Buyer). The Bankruptcy Court Order approving the payment of real estate commission typically directs the estate's real estate professionals to pay the other participating real estate broker from his/her funds.

## CERTIFICATE OF SERVICE

This is to certify that on this day I caused a copy of the foregoing pleading to be served via United States First Class Mail, with adequate postage thereon, on the following parties at the address shown for each:

Debtor(s):

Allison Marie Fuquea
40 E. Camelia Road, NE
Rome, GA  30161

Real Estate Professional(s):

Rich Montgomery
Howard Realty, Inc.
900 North Second Avenue
Rome, GA 30162

Parties-in-Interest

Floyd County Tax Commissioner
4 Government Plaza
Rome, GA  30161

Virginia Harman, Esquire
Floyd County Attorney
McRae, Smith, Peek, Harman & Monroe, LLP
111 Bridgepoint Plaza, Suite 300
Rome, GA 30161

Creditors filing Claims:

Capital One Bank (USA), N.A.
c/o Ashley Boswell
4515 North Santa Fe Avenue
Oklahoma City, OK 73118

Floyd Primary Care Physicians
c/o Julie Payne
P.O. Box 1882
Rome, GA 30162

Premier Bankcard, LLC
Jefferson Capital Systems LLC assignee
c/o Karen Borgmann
P.O. Box 7999
Saint Cloud, MN 56302-9617

658665.1

LVNV Funding, LLC
Resurgent Capital Services
c/o Trisha Doan
P.O. Box 10587
Greenville, SC 29603-0587

Harbin Clinic LLC
c/o Nationwide Recovery Service
c/o Paula Jean Tilley
P.O. Box 8005
Cleveland, TN  37320-8005

Verizon
By American InfoSource as agent
c/o Ashley Boswell
4515 N. Santa Fe Avenue
Oklahoma City, OK  73118

I further certify that I have on this day electronically filed the pleading using the Bankruptcy
Court's Case Management – Electronic Case Filing System (CM/ECF), which sends a notice of
this document and an accompanying link to this document to the following parties who have
appeared in this case and are registered with CM/ECF:

Vanessa A. Leo (Office of the U.S. Trustee)

Jill S. Salter  (Debtor's Counsel)

Brian K. Jordan (Counsel for Cenlar FSB)

        This   12   day of November, 2020.

                                    **BRINSON, ASKEW, BERRY, SEIGLER,**
                                    **RICHARDSON & DAVIS, LLP**

                            By:    _Thomas D. Rich_____
                                    Thomas D. Richardson
                                    Georgia Bar No: 604313
                                    Attorney for Trustee in bankruptcy for the
                                    estate of Allison Marie Fuquea

P.O. Box 5007
Rome, Georgia 30162-5007
(706) 291-8853
trichardson@brinson-askew.com

658665.1